UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC E. FLENTOIL,<br><br>Plaintiff,<br><br>v.<br><br>SANTA CLARA COUNTY DEPT. OF CORRECTIONS,<br><br>Defendant. | Case No. 18-cv-03486-EMC<br><br>**ORDER OF SERVICE**<br><br>Docket Nos. 1, 10, 11, 13, 20, 21 |

## I. INTRODUCTION

Eric Flentoil, an inmate at the Santa Clara County Jail, filed a *pro se* civil rights complaint seeking relief under 42 U.S.C. § 1983, and later filed two amended complaints. The most recent amended complaint is now before the Court for review under 28 U.S.C. § 1915A. His two requests for appointment of counsel and his request for an extension of the deadline to serve the complaint also are before the Court for review.

## II. BACKGROUND

In his most recent amended complaint (Docket No. 21[1]), Mr. Flentoil alleges the following:

Santa Clara Valley Health and Hospital System, Adult Custody Health Services (SCVHHS-ACHS) provides medical care to inmates at the Santa Clara County Jail. Dr. Alexander Chyorny was Mr. Flentoil's primary care physician at the jail, and also was the medical director of the jail.

Mr. Flentoil suffered from a knee problem, i.e., a failed multiligamentous knee

---

[1] The most recent amended complaint (Docket No. 21) supersedes the original complaint (Docket No. 1) and the amended complaint filed on July 5, 2018 (Docket No. 10).

1 reconstruction surgery, that predated his arrival at the Santa Clara County Jail.

2 Mr. Flentoil was booked into the Santa Clara County Jail on April 17, 2018. At that time, he informed SCVHHS-ACHS staff of his knee problem and the need for appropriate accommodation.

Mr. Flentoil requested crutches, a hinged knee brace, and an opioid pain medication that had been prescribed by Dr. Vaughn, his outside doctor, a couple of weeks before his arrival at the jail. Mr. Flentoil signed a release so that SCVHHS-ACHS could communicate with the outside doctor to learn Mr. Flentoil's medical history; this "verification" took place in May 2018, but crutches were not issued until June 20, 2018, even though Mr. Flentoil requested them repeatedly. *Id.* at 2-3. Dr. Chyorny ignored the order of Dr. Vaughn, an outside specialist, when he failed to provide the requested cutches, knee brace and medication. Dr. Chyorny also refused to treat Mr. Flentoil's diabetic neuropathy with appropriate medication. Docket No. 21 at 3.

Although Mr. Flentoil was initially housed in the medical housing unit where there were shower accommodations, he was moved to the general population where the shower area had no ADA accommodations (such as guard rails, a shower chair, or slip-resistant flooring) that he apparently needed for his knee problem. He complained to staff, and was told that he had been cleared to return to general population. In May 2018, Mr. Flentoil submitted a request for medical care as a result of slipping in the shower. He "was promptly re-housed appropriately" after he filed a grievance on May 21, 2018 regarding the ADA accommodations. *Id.* at 4.

### III. DISCUSSION

A. Review of Amended Complaint (Docket No. 21)

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the

violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Medical Care Claim: Deliberate indifference to a pretrial detainee's serious medical needs violates the Fourteenth Amendment's Due Process Clause. The deliberate indifference standard that applies to a pretrial detainee's claim is an objective deliberate indifference test, rather than the subjective deliberate indifference test applicable to a convicted prisoner's claim. *See Gordon v. County of Orange*, 888 F.3d 1118, 1122 & n.4 (9th Cir. 2018).

Liberally construed, the amended complaint states a cognizable due process claim against Dr. Chyorny for deliberate indifference to Mr. Flentoil's serious medical needs based on the allegations that Dr. Chyorny failed to approve crutches and a hinged knee brace, and failed to provide adequate medications to treat Mr. Flentoil's pain and diabetic neuropathy. (The Court assumes that Mr. Flentoil was a pretrial detainee at the relevant time. If he was a convict, his claim would arise under the Eighth Amendment's Cruel and Unusual Punishments Clause rather than the Fourteenth Amendment's Due Process Clause.)

ADA Claim: Title II of the Americans With Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("ADA"), and § 504 of the Rehabilitation Act, as amended and codified in 29 U.S.C. § 701 *et seq.* ("RA"), prohibit discrimination on the basis of a disability in the programs, services or activities of a public entity. Federal regulations require a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

The elements of a cause of action under Title II of the ADA are: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Thompson v. Davis*,

295 F.3d 890, 895 (9th Cir. 2002). A cause of action under § 504 of the RA essentially parallels an ADA cause of action. *See Olmstead v. Zimring*, 527 U.S. 581, 590 (1999); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001).

The proper defendant for a claim under Title II of the ADA and § 504 of the RA is the public entity responsible for the alleged discrimination. *See Everson v. Leis*, 556 F.3d 484, 501 & n.7 (6th Cir. 2009) (collecting cases). *But cf. Eason v. Clark County School Dist.*, 303 F.3d 1137, 1145 (9th Cir. 2002) (declining to decide the issue). Title II of the ADA does not provide for suit against a public official acting in his individual capacity. *Everson*, 556 F.3d at 501. A plaintiff also cannot assert a claim under § 1983 against defendants in their individual capacities to vindicate rights created by the ADA and RA. *See Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002).

Liberally construed, the amended complaint states a claim against the Santa Clara County Department of Corrections for violations of Mr. Flentoil's rights under the ADA and RA based on the allegations that he was not timely provided mobility assistive devices, and temporarily was housed in general population where the shower area had no ADA accommodations (such as guard rails, a shower chair, or slip-resistant flooring) that he needed due to his knee problem,

Although the amended complaint states cognizable claims against Santa Clara County Department of Corrections under the ADA and RA, it does not state a § 1983 claim against this municipal entity because there is no respondeat superior liability under section 1983, i.e. no liability under the theory that one is liable simply because he employs a person who has violated a plaintiff's rights. *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691 (1978).

B. <u>Miscellaneous Requests</u>

Mr. Flentoil has requested that counsel be appointed to represent him in this action. A district court has the discretion under 28 U.S.C. §1915(e)(1) to designate counsel to represent an indigent civil litigant in exceptional circumstances. *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). This requires an evaluation of both the likelihood of success on the merits and the ability of the plaintiff to articulate his claims *pro se* in light of the complexity of the legal issues involved. *See id.* Neither of these factors is dispositive and both must be viewed together

4

before deciding on a request for counsel under § 1915(e)(1). Exceptional circumstances are not present in this action: Mr. Flentoil was able to articulate his claims adequately and there do not appear to be complex issues involved. Mr. Flentoil's requests for appointment of counsel to represent him in this action are DENIED. Docket No. 11 and 13.

Mr. Flentoil's request for an extension of time to serve the complaint is DENIED as unnecessary. Docket No. 20. He is being granted *in forma pauperis* status by separate order filed today. When a plaintiff is proceeding *in forma pauperis*, the U.S. Marshal tends to service of process, and the plaintiff does not need to do so. Mr. Flentoil also does not need to prepare a summons.

Mr. Flentoil has sent six letters, two motions for appointment of counsel, and multiple pleadings in the three months that this case has been pending. He needs to be more patient and more organized. The Court has numerous pending cases and generally will not act on a document the day it is filed but rather will attend to the case in due course. Mr. Flentoil should take better care of his papers, so that he will not need to repeatedly request copies of documents. He also should take more care in preparing his filings; it unnecessarily consumes scarce judicial resources when the Court must read multiple pleadings – here a complaint and two amended complaints – filed in a short period of time that reflect hurried preparation. Finally, the Court notes that there are many misstatements in Mr. Flentoil's miscellaneous filings. (Examples include his statement in his motion for extension of time (Docket No. 20) that he already has been granted *in forma pauperis* status and his statement under penalty of perjury in his declaration for entry of default (Docket No. 15) that defendants were served with a summons and complaint on July 3, 2018.) Mr. Flentoil must avoid making false statements in future filings.

### IV. CONCLUSION

1. Plaintiff's motion to amend the complaint is GRANTED. Docket No. 21. The amended complaint at Docket No. 21 is the operative pleading. The amended complaint, liberally construed, states a cognizable § 1983 claim against Dr. Chyorny and cognizable ADA/RA claims against the Santa Clara County Department of Corrections. All other claims are dismissed.

2. The Clerk shall issue a summons and the United States Marshal shall serve, without

prepayment of fees, the summons, a copy of the complaint and a copy of all the documents in the case file upon the Santa Clara County Department of Corrections and Dr. Alexander Chyorny.

3. In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

    a. No later than **November 16, 2018**, Defendants must file and serve a motion for summary judgment or other dispositive motion. If Defendants are of the opinion that this case cannot be resolved by summary judgment, Defendants must so inform the Court prior to the date the motion is due. If Defendants file a motion for summary judgment, Defendants must provide to Plaintiff a new *Rand* notice regarding summary judgment procedures at the time they file such a motion. *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012).

    b. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the Court and served upon Defendants no later than **December 14, 2018**. Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.

    c. If Defendants wish to file a reply brief, the reply brief must be filed and served no later than **December 28, 2018**.

4. Plaintiff is provided the following notices and warnings about the procedures for motions for summary judgment:

> The defendants may make a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. . . . Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment

granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).

If Defendants file a motion for summary judgment for failure to exhaust administrative remedies, they are seeking to have the case dismissed. As with other defense summary judgment motions, if a motion for summary judgment for failure to exhaust administrative remedies is granted, Plaintiff's case will be dismissed and there will be no trial.

5. All communications by Plaintiff with the Court must be served on Defendants' counsel by mailing a true copy of the document to Defendants' counsel. The Court may disregard any document which a party files but fails to send a copy of to his opponent. Until a defendant's counsel has been designated, Plaintiff may mail a true copy of the document directly to the defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to the party.

6. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

7. Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

8. Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to the Court for consideration in this case.

**IT IS SO ORDERED**.

Dated: September 18, 2018

_____
EDWARD M. CHEN
United States District Judge